UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THOMAS WILLETT on behalf of himself
and all others similarly situated,

                        **Plaintiff,**

  v.

J.C. Christensen & Associates, Inc.,
LVNV Funding, LLC;
Resurgent Capital Services, L.P;
Sherman Financial Group, LLC; Resurgent Capital
Services Limited Partnership; and Benjamin W.
Navarro

                        **Defendants**

No.

**CLASS ACTION COMPLAINT**

Jury Demanded

1. Plaintiff Thomas Willett ("Plaintiff" or "Willett") files this Complaint seeking redress for the illegal practices of Defendants in connection with the collection of a debt allegedly owed by Plaintiff in violation of the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692, *et seq*.

2. The Defendant debt collectors' pattern and practice of gouging New York consumers through the insidious addition of illegal interest is contemptible conduct.

3. The State of Maryland uncovered the Defendant's scheme in that State and has enjoined the Defendants (other than J.C. Christensen) from operating in that state. (See Exhibit A, page 7). Defendants then settled the charges in Maryland and agreed to pay restitution to the consumers who were charged the illegal interest. (Exhibit B)

4. Defendants' gouging scheme as it relates to this case worked as follows: After a consumer defaulted on their Citibank credit card, Citibank would "charge off" the defaulted debt;

1

stop sending the consumer monthly statements; and stop charging the consumer interest. (Citibank was in fact obligated to stop charging interest, because the law requires that if Citibank is charging interest, then they are obligated to send statements.) At some point after Citibank stopped charging interest, Citibank would sell the debt for pennies on the dollar to the LVNV Defendants (further identified below). The LVNV defendants would then seek to collect the interest for the period of time between when Citibank stopped charging interest and when LVNV purchased the debt. On behalf of the LVNV Defendants, the Defendant J.C. Christensen & Associates, Inc. would then send consumers mass mailed dunning letters seeking to collect these Citibank debts with the illegal interest included. The LVNV Defendants would see a windfall, as they would purchase the debt at the stated amount and then immediately increase the amount by retroactively adding back the interest.

5. Plaintiff is suing on behalf of himself and all others similarly situated, to hold the Defendants accountable, stop their practice, and get the consumers their money back.

**Parties**

6. Plaintiff Thomas Willett is a citizen of New York State who resides within this District.

7. Plaintiff is a "consumer" as that term is defined by FDCPA § 1692a(3).

8. The alleged debt of Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a in that it is a debt alleged to be owed for personal, family, or household services.

9. The alleged debt was for the purchase of household and personal products and no part of the alleged debt was incurred for business related items or services.

10. Defendant JC Christensen & Associates, Inc. is a foreign corporation registered to do business in New York and is in the business of collecting debts in this state. The principal purpose of Defendant is the collection of debts using the mails and telephone, and Defendant regularly attempts to collect debts alleged to be due another.

11. The State of Maryland investigated the business and corporate structure and interrelationship of the remaining Defendants other than J.C. Christensen & Associates, Inc. (hereinafter referred to as the "LVNV Defendants") (See Exhibit A)  According to the findings of the State of Maryland, attached as Exhibit A, the State had access to particular corporate documents that had been supplied by the Defendants.  In Exhibit A, the State of Maryland summarized the corporate structure and relationship of the LVNV defendants, which the Plaintiff incorporates herein by reference.  While portions of the corporate structure and interrelationship between the entities is clear from other public filings, Plaintiff relies on Exhibit A for some of the information relating to these entities.

12. Defendant LVNV Funding, LLC is a foreign corporation registered to do business in New York. LVNV Funding, LLC is in the business of collecting debts in this state. The principal purpose of Defendant is the collection of debts using the mails and telephone, and Defendant regularly attempts to collect debts alleged to be due another.

13. Defendant Benjamin W. Navarro is the General Manager of LVNV Funding, LLC and is responsible for the day to day activities of LVNV Funding, LLC.  (See Exhibit A, page 7) As an owner and General Manager Defendant Navarro is responsible for, and controls, the Defendants' policy of charging the illegal interest to New York consumers as further described herein. Defendant Navarro was aware of the State of Maryland's 2011 investigation into their practice of charging the illegal interest further described in this Complaint. (Exhibit A, page 7)

This Defendant was aware that LVNV Funding, LLC and Resurgent Capital Services Limited Partnership agreed to pay restitution to Maryland consumers for charging this illegal interest. (Exhibit B) Notwithstanding this Defendant's ability to stop the illegal procedure, they chose to permit the other entities to continue the practice, or willfully chose not to determine whether the illegal practice was continuing. This Defendant's choice not to stop the procedure led to the practice continuing, after which the Plaintiff herein, as well as the other New York consumers in the putative class fell victim to the illegal practice.

14. Resurgent Capital Services Limited Partnership a/k/a Resurgent Capital Services L.P., f/k/a Alegis Group Limited Partnership (a/k/a Alegis Group L.P.) (hereinafter,"Resurgent"), acts as the master servicer for charged off consumer debt owned by LVNV, servicing, administering, and collecting LVNV Funding, LLC's charged-off receivables. Resurgent Capital Services Limited Partnership was aware of the State of Maryland's 2011 investigation into their illegal practice of charging the illegal interest further described in this Complaint. (Exhibit A, page 7) This Defendant was aware that LVNV Funding, LLC and Resurgent Capital Services Limited Partnership agreed to pay restitution to Maryland consumers for charging this illegal interest. (Exhibit B) Notwithstanding this Defendant's ability to stop the illegal procedure, this Defendant chose to permit the other entities to continue the practice, or willfully chose not to determine whether the illegal practice was continuing. This Defendant's choice not to stop the procedure led to the practice continuing, after which the Plaintiff herein, as well as the other New York consumers in the putative class fell victim to the illegal practice.

15. Sherman Financial Group, LLC owns operates and controls all of the other LVNV entities. Sherman Financial Group, LLC was aware of the State of Maryland's 2011 investigation into their illegal practice of charging the illegal interest further described in this Complaint.

4

(Exhibit A, page 7) This Defendant was aware that LVNV Funding, LLC and Resurgent Capital Services Limited Partnership agreed to pay restitution to Maryland consumers for charging this illegal interest. (Exhibit B) This Defendant was aware that the LVNV Funding, LLC and Resurgent Capital Services Limited Partnership agreed to pay restitution to Maryland consumers for charging this illegal interest. (Exhibit B) Notwithstanding Sherman Financial Group, LLC's ability to stop the illegal procedure, they chose to permit the other entities to continue the practice, or willfully chose not to determine whether the illegal practice was continuing. This Defendant's choice not to stop the procedure led to the practice continuing, after which the Plaintiff herein, as well as the other New York consumers in the putative class fell victim to the illegal practice.

16. All Defendant is regularly engaged in the collection of debts allegedly due to others.

17. All Defendants are a "debt collectors," as defined by FDCPA § 1692a(6) in that regularly and consistently seek to collect consumer debts that were acquired after default.

18. Defendant will add further Defendants related to the LVNV Defendants after further discovery as appropriate.

**Jurisdiction and Venue**

19. This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

20. Declaratory relief is available under 28 U.S.C. §§ 2201 and 2202.

21. Venue is proper in this district under 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

5

22. Venue is also proper in this district since Defendant transact business in this district.

**Factual Allegations**

23. Plaintiff incurred a debt to Citibank (South Dakota) N.A. (hereinafter Citibank) and fell into default.

24. In or around January 2010 Citibank "charged off" the defaulted debt.

25. At the time of charge off the Citibank debt was $2,986.93.

26. In or around January 2010 Citibank stopped sending the Plaintiff monthly statements.

27. Under 12 C.F.R.§ 226.5(b)(2)(i) if Citibank chose to continue to charge the Plaintiff interest, then they were obligated to continue to send the Plaintiff his monthly statements. *Simkus v. Cavalry Portfolio Servs., LLC*, 2012 U.S. Dist. LEXIS 70931, 1-2 (N.D. Ill. May 22, 2012); *McDonald v. Asset Acceptance LLC*, 2013 U.S. Dist. LEXIS 110829, 26-27 (E.D. Mich. Aug. 7, 2013).

28. Instead, Citibank chose to waive their right to continue to charge the Plaintiff interest so that they could stop sending the Plaintiff monthly statements regarding a debt that the Citibank chose instead to "charge off."

29. Plaintiff did not receive the benefit of the monthly disclosures to which he was entitled if Citibank had chosen to continue to charge him interest.

30. In "charging off" the defaulted debt, Citibank was no longer obligated to carry the "bad debt" on their internal books, and could receive a "bad debt" tax deduction. See I.R.C. § 166(a)(2), and *Simkus v. Cavalry Portfolio Servs., LLC*, 2012 U.S. Dist. LEXIS 70931, 1-2 (N.D.

6

Ill. May 22, 2012); *McDonald v. Asset Acceptance LLC*, 2013 U.S. Dist. LEXIS 110829 *28 ( E.D. Mich. Aug. 7, 2013).

31. In or around August 2011, the LVNV Defendants claim to have obtained the legal right to collect the alleged debt.

32. On information and belief, the Defendants did not purchase the right to a collect retroactive interest for the period after Citibank had waived the interest. Nor could they have purchased such right, as Citibank had already waived their right to collect that interest, by not sending the required statements, and taking the tax benefit of the charge off.  See I.R.C. § 166(a)(2), and *Simkus v. Cavalry Portfolio Servs., LLC*, 2012 U.S. Dist. LEXIS 70931, 1-2 (N.D. Ill. May 22, 2012); *McDonald v. Asset Acceptance LLC*, 2013 U.S. Dist. LEXIS 110829 *28 ( E.D. Mich. Aug. 7, 2013).

33. The LVNV Defendants then added back into the debt the interest that Citibank had waived for the period between when Citibank stopped sending the Plaintiff statements, and when LVNV claims to have obtained the right to collect the debt. (approximately, January 2010 through August 2011). Through this illegal gouge, the LVNV Defendants immediately increased the value of the debt that they purchased, obtaining a windfall.

34.  On November 13, 2012, Defendant J.C. Christensen & Associates, Inc. on behalf of the LVNV Defendants sent the Plaintiff the letter attached as Exhibit C.

35. Exhibit C seeks to collect $4,090.36 from Plaintiff for the Citibank debt.

36. On December 12, 2012, Defendant J.C. Christensen & Associates, Inc., on behalf of the LVNV Defendants sent the Plaintiff the letter attached as Exhibit D.

37. Exhibit D seeks to collect $4,125.62 from the Plaintiff for the Citibank Debt.

38. Exhibit C and Exhibit D read together indicate that the Defendant was charging $35.26 per month in interest to the principal amount of the Citibank debt.

39. Exhibit D, dated December 12, 2012 seeks to collect a total of $4,125.62 for the Citibank debt, which is $1,138.69 more than the $2,986.93 that Citibank charged off in January 2010.

40. The $1,138.69 in interest Defendants sought to collect with their December 12, 2012 letter (Exhibit D) is comprised of over 32 months of interest at $35.26 per month.

41. The Defendants did not have the legal right to attempt to collect the interest for the period between when Citibank charged off the debt and stopped sending statements, and August 2011 when the LVNV Defendants claim to have acquired the legal right to collect the debt.

42. According to 15 USC 1692f(1) of the FDCPA, the Defendant's in fact do not have the right to add any additional fees, or interest on the account unless they can substantiate their legal right to the interest.

43. The Defendants additionally need to prove that they in fact are the legal owners of the account and have a basis to attempt to collect any portion of the Citibank debt.

44. In May 2013, the LVNV Defendants hired an attorney to sue the Plaintiff for the alleged debt in New York state court. The Summons and Complaint in said lawsuit are attached as See Exhibit E.

45. The Complaint in the state court lawsuit, Exhibit E, indicates that proper amount due and owing for the Citibank debt is $2,986.93 plus interest from August 12, 2011, which on information and belief is the date that the Defendant alleges to have acquired the right to collect the Citibank debt.

46. The Plaintiff did not receive any statements from Citibank after they charged off the debt in January 2010.

47. Following January 2010, Citibank has not reported to any credit reporting agency that Plaintiff owed anything more than $2,986.93.

48. On information and belief, the amount of Plaintiff's Citibank debt that Defendant claims to have acquired the right to collect was $2,986.93, and such amount did not include any interest between January 2010 and August 2012.

49. On information and belief, it is the regular business practice of Citibank to stop charging interest after charging off a debt. (See, *McDonald v. Asset Acceptance LLC*, 2013 U.S. Dist. LEXIS 110829, 26-27 ( E.D. Mich. Aug. 7, 2013)

50. Citibank waived their right to collect the interest for the period after they charged off the debt and stopped sending Plaintiff the required monthly statements.

Class Action Allegations

51. Under Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

   a. Based on the fact that the collection letter at the heart of this litigation is a mass-mailed form letters, the class is so numerous that joinder of all members is impractical.

   b. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. These common questions include whether Exhibit D violates the FDCPA.

   c. The claims of Plaintiff are typical of the class members' claims. All are based on the same facts and legal theories. The only individual issue is the identification of the consumers who received the letter, (*i.e.*, the class members), which is a matter capable of ministerial determination from the Defendants' records.

   d. Plaintiff will fairly and adequately represent the class members' interests. All claims are based on the same facts and legal theories and Plaintiff's interests are consistent with the interests of the class.

9

   e. Plaintiff has retained counsel experienced in bringing class actions and collection abuse claims.

52. A class action is superior for the fair and efficient adjudication of the class members' claims.

53. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. *See* 15 U.S.C. § 1692k.

54. The class members are generally unsophisticated individuals unaware of the protections afforded them by the FDCPA, which rights will not be vindicated in the absence of a class action.

55. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

56. If the facts are discovered to be appropriate, Defendant will seek to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

57. This Count is brought by Plaintiff, individually, and on behalf of a class that, according to Defendants' records, consists of: (a) all individuals who have mailing addresses within New York State; and (b) within one year before the filing of this action; (c) were sent a collection letter in a form materially identical or substantially similar to Exhibit D attached to Plaintiff's Complaint ; (d) which was not returned by the postal service as undeliverable.

58. Collection letters, such as those sent by Defendant, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

59. The LVNV Defendant's allege to have purchased the right to collect the

defaulted Citibank account.

60. On information and belief, the portfolio of debt that the LVNV Defendant's allege to have acquired contained more than 50 New York consumers.

61. On information and belief, the Defendant J.C. Christensen & Associates, Inc. sent more than 50 letters materially identical or substantially similar to New York consumers within the class period.

## Count I
## Violations of the Fair Debt Collection Practices Act

62. Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

## Exhibit A

63.  By sending Exhibit D, the Defendant violated numerous provisions of the FDCPA, including 15 U.S.C. §§ 1692 e, e(2), e(5), and e(10), and §§ 1692 f and f(1).

64. By sending Exhibit D and attempting to collect the illegal interest as described herein, the Defendant violated numerous provisions of the FDCPA, including 15 U.S.C. §§ 1692 e, -e(2), -e(5), -e(10), -f, -f(1) and g.

65. By sending Exhibit D, Defendant violated 15 U.S.C. § 1692e, e(2)(A), and e(10), by falsely representing the character, amount, and legal status of the alleged debt. Exhibit C also

11

falsely indicates that the Defendant can continue to charge interest.   This is also an unfair and unconscionable act under 15 U.S.C. §§ 1692f and -f(1).

66.  By sending Exhibit D, Defendant also violated 15 U.S.C. § 1692e, e(2)(B), and e(10), by falsely representing services rendered and compensation which may be lawfully received by Defendants for the collection of the alleged debt. This is also an unfair and unconscionable act under 15 U.S.C. § 1692f and 15 U.S.C. § 1692f(1).

67.  By sending Exhibit D, Defendant also violated 15 U.S.C. § 1692f and 15 U.S.C. § 1692f(1) by attempting to collect interest or a fee that is not permitted by law, or authorized by an agreement.

68. By sending Exhibit D, Defendant also violated 15 U.S.C. § 1692e(5), by threatening to continue to charge interest. This is also an unfair and act under 15 U.S.C. § 1692f.

69.  Defendant's violations of 15 U.S.C. §1692, *et seq*., render Defendant liable to Plaintiff and the Class.

70. As a result of Defendant's deceptive, insidious, and unfair debt collection practices, Defendant is liable to Plaintiff and the Class.


WHEREFORE, Plaintiff asks that this Court enter judgment in his favor and in favor of the members of the Class, against Defendants, awarding damages as follows:

    (A) Statutory damages as provided by § 1692k of the FDCPA;

    (B) Actual damages provided under the FDCPA, 15 U.S.C. 1692k;

    (C) Attorneys' fees, litigation expenses and costs incurred in bringing this action;

    (D) Declaratory relief declaring that Exhibit A violates the FDCPA; and

    (E)  Any other relief this Court deems appropriate and just.

**Jury Demand**

Plaintiff demands trial by jury.


Dated: West Islip , New York
          December 10, 2013

                                      RESPECTFULLY SUBMITTED,


                                      /S/ JOSEPH MAURO
                                      Joseph Mauro
                                      The Law Office of Joseph Mauro, LLC
                                      306 McCall Ave.
                                      West Islip, NY 11795
                                      631-669-0921

                                      Plaintiff's Attorney